## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN A. SILVA,                          :          Civil No. 3:22-cv-472
                                         :
        Petitioner                       :          (Judge Mariani)
                                         :
    v.                               :
                                         :
WARDEN STEPHEN SPAULDING,                :
                                         :
        Respondent                       :

### MEMORANDUM

Petitioner Shawn Silva ("Silva"), an inmate currently incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania ("FPC-Lewisburg"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1). Silva seeks an Order directing the Bureau of Prisons ("BOP") to award him earned time credits ("ETC") pursuant to the First Step Act ("FSA") and to immediately release him from custody.  (*Id.* at pp. 6-8).  For the reasons set forth below, the Court will deny the habeas petition.

### I.    Background

Silva is serving a sixty-month term of imprisonment imposed by the United States District Court for the District of Rhode Island for conspiracy to possess more than 500 grams of cocaine, and possession with intent to distribute more than 500 grams of cocaine and more than 100 grams of heroin.  (Doc. 6-1, pp. 6-8).  Silva's projected release date is October 16, 2023, via earned time credits under the First Step Act.  (*Id.*).

The BOP has assessed Silva as having a low risk of recidivism. (*Id.* at pp. 16-17). He was also assessed with criminogenic needs of anger/hostility, education, finance/poverty, and he was previously assessed with a need for medical. (*Id.*). During his incarceration, Silva has completed various programming activities ("PAs"), including Brain Health as You Age and the Arthritis Foundation Walk with Ease. (*Id.*). Silva was assessed to have earned 90 days of First Step Act Time Credits. (*Id.* at p. 5 ¶ 11; *Id.* at p. 12).

The Administrative Remedy Generalized Retrieval demonstrates that Silva has filed three administrative remedies while in BOP custody—numbers 1108957-F1, 1108957-F2, and 1108967-R1. (*Id.* at pp. 9-11).

In his § 2241 petition, Silva asserts that he is entitled to the application of 365 days of earned time credits to his sentence. (Doc. 1, pp. 6-8). Silva seeks immediate release from custody. (*Id.*). Respondent contends that Silva's § 2241 petition should be denied because: (1) Silva failed to exhaust his administrative remedies; and (2) the petition lacks merit. (Doc. 6). For the reasons discussed below, the Court will deny the habeas petition.

II.    **Discussion**

A.    **Exhaustion of Administrative Review**

Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is

required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (*per curiam*)).  Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." *See id.* at 762.  However, exhaustion is not required when it would not promote these goals, such as when exhaustion would be futile.  *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); *Carling v. Peters*, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  28 C.F.R. §§ 542.10-542.19 (2005).  If an issue raised by the inmate cannot be resolved through this administrative remedy system,

3

the BOP will refer the inmate to appropriate statutorily mandated procedures. 28 C.F.R. §

542.10(c). The system first requires an inmate to present their complaint to staff before

filing a request for administrative relief, which staff shall attempt to informally resolve. 28

C.F.R. § 542.13(a). If informal resolution is unsuccessful, an inmate may file a formal

written complaint to the Warden, on the appropriate form, within twenty calendar days of the

date of the event or occurrence and the Warden shall provide a response within twenty

calendar days. 28 C.F.R. §§ 542.14, 542.18. If the inmate is dissatisfied with the Warden's

response, he may file an appeal to the Regional Director within twenty calendar days. 28

C.F.R. § 542.15(a). The Regional Director has thirty calendar days to respond. 28 C.F.R. §

542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that

decision may be appealed to the BOP's General Counsel at Central Office within thirty

calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a).

No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's

Central Office. 28 C.F.R. § 542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System

("SENTRY"). In the ordinary course of business, computerized indexes of all formal

administrative remedies filed by inmates are maintained by the Institution, Regional, and

Central Offices. SENTRY generates a report titled "Administrative Remedy Generalized

Retrieval" which allows codes to be entered to identify the reason or reasons for rejecting a

request for administrative relief.

Silva's Administrative Remedy Generalized Retrieval report reveals that he failed to properly exhaust the claims in the instant habeas petition. (Doc. 6-1, pp. 9-11, Administrative Remedy Generalized Retrieval). The record before the Court indicates that on February 3, 2022, Silva submitted Administrative Remedy Number 1108957-F1, requesting that First Step Act Time Credits per month be applied. (*Id.* at p. 10). On February 3, 2022, his request was rejected for failing to first attempt informal resolution. (*Id.*). On February 10, 2022, Silva refiled Administrative Remedy number 1108957-F2, again requesting that First Step Act Time Credits per month be applied. (*Id.*). Silva received an informational response, and the remedy was closed. (*Id.*). On March 24, 2022, Silva appealed to the Regional Office, designated as Administrative Remedy Number 1108957-R1. (*Id.* at p. 11). On March 29, 2022, the appeal was rejected for including more than one BP-10 form. (*Id.*). He was advised that he had ten days to properly refile the administrative remedy. (*Id.*). Silva did not refile. (*See id.*). The record further indicates that Silva did not appeal to the Central Office. (*See id.*).

Silva does not dispute that he commenced the instant action without first exhausting the BOP's administrative remedy procedure. (Doc. 1, pp. 2-3). Even if Silva thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1,

2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D.

Pa. Sept. 1, 2009)); *see also Suarez-Sanchez v. Lane*, No. 4:18-cv-1431, 2019 WL

1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's § 2241 petition

was subject to dismissal for failure to exhaust because the petitioner "never fully and

properly appealed [his] grievance because he apparently deemed the grievance process to

be a waste of time"), *report and recommendation adopted*, 2019 WL 1620339 (M.D. Pa.

Apr. 16, 2019).

The Court recognizes that administrative exhaustion is not required if "the issue

presented only pertains to statutory construction." *Kurti v. White*, No. 1:19-cv-2109, 2020

WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020). In *Goodman v. Ortiz*, No. 20-7582 (RMB),

2020 WL 5015613 (D.N.J. Aug. 25, 2020), the parties did not dispute that the inmate-

petitioner had successfully participated in several programming activities that met the

requirements of the FSA or had earned a specific number of ETC. *See Goodman*, 2020 WL

5015613, at *2. Instead, the court considered whether the FSA required that the ETC

earned by the petitioner be applied before January 15, 2022. *See id.* The court concluded

that the inmate-petitioner was exempt from the administrative exhaustion requirement

because the matter "present[ed] a narrow dispute of statutory construction" and because

"habeas relief should be granted." *See id.* at *3. However, the instant case not only

involves when Silva is eligible for the application of any ETC, but also involves a dispute as

to the specific number of ETCs earned by Silva. The latter issue is unrelated to statutory

6

construction and, therefore, the exhaustion requirement cannot be excused. *See Kurti*,

2020 WL 2063871, at *3 (noting that the petitioner "has clearly failed to exhaust

administrative remedies with respect to the time credit he requests"); *see also Cohen v.*

*United States*, No. 20-cv-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021)

(concluding that the inmate-petitioner was not excused from exhausting because the parties

disputed his "eligibility for, participation in, and applicability of the various programs he

claims to have completed to any potential time credits under the FSA"); *Maggio v. Joyner*,

No. 7:21-21-DCR, 2021 WL 1804915, at *1-2 (E.D. Ky. Mar. 25, 2021) (concluding same to

determine that the inmate-petitioner's § 2241 petition was subject to dismissal for failure to

exhaust). Thus, Silva's § 2241 petition must be dismissed for failure to exhaust his

administrative remedies. To hold otherwise would frustrate the purposes of the exhaustion

doctrine by allowing Silva to invoke the judicial process despite failing to complete

administrative review. Nevertheless, the Court will address the merits of his petition below.

### B.    Merits of the Habeas Petition

Under the FSA, the Attorney General was charged with development and release of

a Risk and Needs Assessment System ("the System") within 210 days of December 21,

2018, the date on which the FSA was enacted. *See* 18 U.S.C. § 3632. The System is to be

used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of

violent or serious misconduct; (3) determining the type and amount of evidence-based

recidivism reduction ("EBRR") programming appropriate for each inmate; (4) periodically

assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and

PAs; (5) determining when to provide incentives and rewards for successful participation in

EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release

custody or supervised release. *See id.* § 3632(a). Moreover, the System provides

guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to

each inmate based on the inmate's specific criminogenic needs." *Kurti*, 2020 WL 2063871,

at *4 (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to

receive earned time credits to be applied toward time in pre-release custody or supervised

release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for

every thirty (30) days of successful participation. *See id.* Moreover, eligible inmates who

have been assessed at a minimum or low risk of recidivism who do not increase their risk of

recidivism over two (2) consecutive assessments may earn five (5) days of time credit for

every thirty (30) days of successful participation. *See id.* However, an inmate may not earn

time credits for EBRR programs completed prior to the enactment of the FSA. *See id.* §

3632(d)(4)(B)(i). The Attorney General was allowed 210 days after the FSA was enacted to

develop and publish the System, which the BOP then used as a guide to implement the

EBRRs and PAs. *See id.* § 3632(a). The Attorney General published the System on July

19, 2019, and the BOP then had 180 days, or until January 15, 2020, to implement the

System, complete assessments, and begin to assign prisoners to appropriate EBRRs. *See*

*Kurti*, 2020 WL 2063871, at *4 (citing 18 U.S.C. 9 § 3621(h)).  Moreover, the FSA provides

that EBRRs and PAs are to be phased in over a period of two (2) years, from January 15,

2020 to January 15, 2022.  *See* 18 U.S.C. § 3621(h)(2).

ETC credits are "earned only when an inmate successfully completes one of the

BOP-approved EBRR programs or PAs related to one of the particular needs assigned to

that inmate."  *Hare v. Ortiz*, No. 20-14093, 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021).

Respondent submitted the Declaration of Jennifer Knepper, BOP Attorney Advisor, to

explain Silva's assignment to EBRR programs and PAs pursuant to the FSA.  (Doc. 6-1, pp.

3-5).  The BOP has assessed Silva as having a low risk of recidivism and having

criminogenic needs of anger/hostility, education, finance/poverty, and previously assessed

with a medical need.  (*Id.* at pp. 16-17).  During his incarceration, Silva has completed

various programming activities, including Brain Health as You Age and the Arthritis

Foundation Walk with Ease.  (*Id.*).  The BOP calculated his federal time credits, and based

on his risk and needs assessment, he earned 90 days of First Step Act Time Credits for

successful participation in assigned programming since December 21, 2018.  (*Id.* at p. 5 ¶

11; *Id.* at p. 12).  In accordance with this calculation, Silva has not earned sufficient time

credits for immediate release.  Thus, the Court cannot grant Silva the relief he seeks.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 will be denied.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May __11th__, 2022